# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| AMBER JONES and DEANNA LACK, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | NO. 3:16-cv-00677 |
| | ) | CHIEF JUDGE CRENSHAW |
| KENT COLEMAN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This case, now before the Court for a second time, presents a constitutional challenge to a Tennessee statute, that, in part, defines a political campaign committee (also known as a political action committee or "PAC") as "[a] combination of two (2) or more individuals, including any political party governing body, whether state or local, making expenditures, to support or oppose any candidate for public office or measure, but does not include a voter registration program." Tenn. Code Ann. § 2-10-(12)(A) ("subsection 12(A)"). The first time the matter was considered, the Court found Pullman abstention to be appropriate and stayed the case pending resolution of state administrative proceedings involving Williamson Strong, an unincorporated group of parents involved in Williamson County school board and election matters. The Sixth Circuit disagreed with that resolution and remanded the case for further proceedings. Jones v. Coleman, 848 F.3d 744, 747 (6th Cir. 2017).

After the case was returned to this Court, Plaintiffs renewed their request for a preliminary injunction (Doc. No. 54), and the Court set the matter for a hearing. (Doc. No. 58.) In doing so, the Court suggested that the parties seriously consider entering into an agreed injunction because

Defendants' position is that Plaintiffs are not a PAC within the meaning of subsection 12(A), and an Administrative Law Judge had since decided that Williamson Strong does not fall within that subsection either. Within hours of that suggestion, however, Defendants filed a Motion to Stay. (Doc. No. 59.) This was followed the next day by a Joint Notice from the parties, which indicated Defendants would not enter into an agreed injunction or consent decree. (Doc. No. 60.)

Prior to reaching the pending motions, the Court considers the question of standing. This is because not only is standing "a threshold requirement for federal jurisdiction," Binno v. Am. Bar Assoc., 826 F.3d 358, 344 (6th Cir. 2016), the parties, as instructed by the Court, addressed that issue as a part of their pre-hearing submissions.

**I. Standing**

Under Article III of the Constitution, this Court is limited to deciding cases or controversies, an element of which is standing. Ariz. State Legislature v. Ariz. Ind. Redistricting Comm'n, 135 S.Ct. 2652, 2663 (2015). The requirements for standing have been set forth by the Supreme Court as follows:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992) (internal quotation marks, citations, and footnote omitted). "In requiring a particular injury, the Court [in Lujan] meant that 'the injury must affect the plaintiff in a personal and individual way.'" Ariz. Christian Sch. Tuition Org. v. Winn, 563 U.S. 125, 134 (2011) (quoting Lujan, at 560 n. 11, 112 S.Ct. 2130).

Defendants contend that Plaintiffs lack standing for a number of reasons. They argue that the Campaign Financial Disclosure Act imposes no burden on Plaintiffs as individuals, and that the registration and disclosure requirements of the Act apply only to the PAC itself (in this case Association for Accurate Standards in Education/Tennessee Public Education Advocates ("AASE/TPEA") and its appointed political treasurer, which neither Plaintiff claims to be. Defendants next argue that Plaintiffs do not have third-party standing to act on behalf of AASE/TPEA because there is no evidence to suggest that it cannot protect its own rights and interests. Defendants also argue that Plaintiffs cannot show a "credible threat of prosecution," because the Registry has (1) sent no enforcement or warning letters to Plaintiffs or AASE/TPEA (and, in fact was unaware of its existence prior to the filing of this action), and (2) decided not to challenge the Administrative Law Judge's decision that Williamson Strong is not a political campaign committee as currently defined in subsection (12)(A). Finally, Defendants argue pending legislation will likely eliminate Plaintiffs' challenges to Tennessee's provisions for PACs. Even though Defendants devote nearly one-third of their 23-page response brief to the issue of standing, conspicuously absent is any mention the Sixth Circuit's prior discussion of the issue. While they do address that decision in their recently-filed supplemental brief (Doc. No. 67) by arguing that this Court is not bound by the Sixth Circuit's opinion on standing because it is "not necessarily decided" and standing can be addressed at any time, the Court is unpersuaded that

3

Plaintiffs lack standing under the facts presented.

> In it prior opinion in this case, the Sixth court wrote:
>
> The Registry argues that Appellants lack standing to bring either an as-applied or a facial (i.e., "overbreadth") challenge, and that the district court therefore did not have jurisdiction to hear the case. We disagree. First, Appellants can bring this claim on behalf of AASE. The Supreme Court has held that in "overbreadth" challenges, "[l]itigants . . . are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." . . . Second, regarding as-applied challenges, the Supreme Court has repeatedly held that individuals or groups need not wait to be prosecuted for the exercise of First Amendment rights before they can bring a lawsuit, provided there is a "claim of specific present objective harm or a threat of specific future harm." . . . Here, Appellants have done more than merely allege a potential chilling effect of the law. They have not only refrained from making independent political expenditures through AASE, but they have also raised the specter of fines and registration requirements, citing the ongoing Williamson Strong case, in which the Registry stipulated that Williamson Strong is an unincorporated association for the purpose of the Tennessee Financial Disclosure Act.
>
> Based on the allegations in the Complaint and the aforementioned stipulation in Williamson Strong, we are satisfied that Appellants meet both the constitutional requirements for standing, . . . and the somewhat relaxed prudential standing requirements for First Amendment challenges.

Jones, 848 F.3d at 748-49. Plaintiffs insist this foregoing language is the law of the case on the issue of standing, and cite Cleveland Branch, NAACP v. City of Parma, 263 F.3d 514, 524 (6th Cir. 2001) for the proposition that standing is determined as of the time the complaint is filed.

The law of the case "doctrine mandates that the district court adhere to rulings of the appellate court issued earlier in the case," but is subject to exception "in the face of an intervening change in law, new evidence, or a manifest injustice." United States v. Charles, 843 F.3d 1142, 1145 (6th Cir. 2016). Furthermore, while the Sixth Circuit in Cleveland Branch stated that a "court must determine whether standing exists at the time of the filing of the complaint only," 263

F.3d at 526, it has also determined that "a plaintiff must have a personal interest at the commencement of the litigation (standing) that continues throughout the litigation (lack of mootness)." Barry v. Lyon, 834 F.3d 706, 714 (6th Cir. 2016); see Midwest Media Prop., L.L.C. v. Symmes Twp., Ohio, 503 F.3d 456, 460 (6th Cir. 2007) ("Even when an action presents a live case or controversy at the time of filing, subsequent developments – including the passage of a new law or an amendment to the original law – may moot the case.").

Regardless, all that has changed since the Sixth Circuit issued its opinion on February 15, 2017, is that the Administrative Law Judge has entered a decision in Williamson Strong, and the Registry has expressed an intention not to enforce subsection 12(A) for now. Neither circumstance, however, affects Plaintiffs' standing or ability to proceed with this case.

To begin with, and as the Sixth Circuit observed, the parties in Williamson Strong did not dispute that it was a PAC under Tennessee law. Rather, the resolution of that matter turned on the fact that expenditures were not made by Williamson Strong. Here, Plaintiffs have expressed an intent to spend approximately $50 in target advertising to encourage voters to vote for a particular candidate and against another in an upcoming election, meaning that, if Plaintiffs follow through as they desire, the Registry could enforce the PAC regulations against them without running afoul of the Administrative Law Judge's decision. Furthermore, there is nothing to suggest that the Registry will not or cannot change its mind, now or in the future.

Besides, "[i]t is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289 (1982). Defendants' assertion that the Registry will forego enforcing subsection 12(A) at least until August 2017, and the fact that the

5

law may soon change does not meet "the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur," Friends of the Earth, Inc. v. Laidlaw Envt'l. Servs., 528 U.S. 167, 190 (2000), particularly since "voluntary cessation" in the face of litigation "shows a greater likelihood that it could be resumed," Northland Family Planning Clinic v. Cox, 487 F.3d 333, 342-43 (6th Cir. 2007).

The Court concludes that Plaintiffs have standing.

## II. Motion to Stay

Defendants have moved to stay the proceedings and the upcoming preliminary injunction hearing as a result of House Bill 550 and Senate Bill 1265, which are now pending in the Tennessee General Assembly. Those bills amend the definition of a PAC and, more importantly, delete the language that Plaintiffs claim to be unconstitutional in this case. The proposals would also more closely align Tennessee's definition of a PAC with that under the Federal Election Campaign Act of 1971.

The proposed legislation, Defendants claim, is supported by the Registry of Elections, has moved through committees without objection, and is expected to reach both the Tennessee Senate and House of Representatives within the next couple of weeks. If the bills pass as expected, Defendants argue that this "would substantially affect the statutory scheme at issue and potentially moot Plaintiffs' claims." (Doc. No. 59 at 1). In the interim, and as already noted, the Registry has decided not to enforce subsection 12(A).

"'A stay is not a matter of right, even if irreparable injury might otherwise result.'" Nken v. Holder, 556 U.S. 418, 433 (2009). Nevertheless, "'[t]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes in its docket with

economy of time and effort for itself, for counsel and for litigants, and the entry of such an order ordinarily rests with the sound discretion of the District Court.'" F.T.C. v. E.M.A. Nationwide, Inc., 767 F.3d 611, 626-27 (6th Cir. 2014).

"[T]he propriety of its issue is dependent upon the circumstances of the particular case,'" and "[t]he party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion.'" Nken, 556 U.S. at 433-34. "In exercising its 'substantial discretion to determine whether to grant a stay,' a district court generally considers (1) 'any prejudice to the non-moving party if a stay is granted,' (2) 'any prejudice to the moving party if a stay is not granted,' and (3) 'the extent to which judicial economy and efficiency would be served by the entry of a stay.'" Tennessee ex rel. Cooper v. McGraw-Hill Companies, Inc., 2013 WL 1785512, at *6 (M.D. Tenn. Apr. 25, 2013) (quoting, In re Honda of America Mfg., Inc. ERISA Fees Litigation, 2009 WL 700696 at *1 (S.D. Ohio 2009)).

Those factors weigh in favor of a stay, at least to the extent that Plaintiffs can be assured that they will, in fact, be able to participate in upcoming elections without repercussions, including the election for Tennessee House of Representative District 95 on June 15, 2017. Towards that end, the Court will grant an injunction based upon Defendants' representation that they do not intend to enforce the statute against Plaintiffs, and thus neither party will be prejudiced by a stay. Moreover, a stay will temporarily stop proceedings in this Court, meaning that the parties will not be required to respond to any outstanding discovery requests or prepare for and attend an Initial Case Management Conference that is set to be scheduled. Likewise, the parties will not be required to prepare and participate in a preliminary injunction hearing that, from all outward appearances, will be an exercise in formality since the parties apparently do not intend to present

any new facts at such a hearing.

### III. Renewed Motion for a Preliminary Injunction

In their Joint Notice, the parties suggested that the "injunction hearing should go forward," (Doc. No. 60 at 1), but why that is so is unclear. By that time, Plaintiffs had already represented that they did "not intend to offer live testimony" at the hearing and would instead argue the Motion (Doc. No. 57 at 2), a point they confirmed when they filed their witness list. For their part, at the time the Joint Notice was filed, Defendants had not only moved to stay the proceedings, but also had represented that the State did not intend to enforce the challenged provision of the statute as presently written. (Doc. No. 59 at 5.) Calling witnesses, therefore, would presumably only serve to confirm that position.

Regardless, holding a hearing is not an absolute prerequisite prior to issuing a preliminary injunction particularly where, as here, the facts are not in dispute. See Farnsworth v. Nationstar Mortg., LLC, 569 F. App'x 421, 427 (6th Cir. 2014) ("Fed. R. Civ. P. 65, which governs preliminary injunctions, does not explicitly require an evidentiary hearing," and Sixth Circuit case law has "[e]xplain[ed] that district courts should conduct hearings before ruling on motions for a preliminary injunction where facts are bitterly contested, but have not required a hearing when no material facts are in dispute"); Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp., 511 F.3d 535, 553 (6th Cir. 2007) (stating that an evidentiary hearing on a request for preliminary injunction is only necessary where there are questions of fact in dispute). Accordingly, the Court turns to the merits of the request for injunctive relief.

"A preliminary injunction is an 'extraordinary and drastic remedy,'" that "is never awarded as of right." Munaf v. Geren, 553 U.S. 674, 689-90 (2008) (citations omitted). Accordingly,

"[t]he party seeking a preliminary injunction bears the burden of justifying such relief." McNeilly v. Land, 684 F.3d 611, 615 (6th Cir.2012).

"District courts gauge requests for a preliminary injunction based on four factors: (1) the plaintiffs'' likelihood of success on the merits; (2) irreparable harm to plaintiffs absent injunctive relief; (3) substantial harm to others resulting from an injunction; and (4) the broader public interest." Michigan State AFL-CIO v. Schuette, 847 F.3d 800, 803 (6th Cir. 2017) (citing, Washington v. Reno, 35 F.3d 1093, 1099 (6th Cir. 1994)). These factors are to be balanced against one another and should not be considered prerequisites to the grant of a preliminary injunction. Leary v. Daeschner, 228 F.3d 729, 736 (6th Cir. 2000).

The ultimate determination of whether the factors favor or disfavor a preliminary injunction is a matter of discretion for the trial court. Wilson v. Gordon, 822 F.3d 934, 958 (6th Cir. 2016); O'Toole v. O'Connor, 802 F.3d 783, 791 (6th Cir. 2015). Still, "[w]hen a party seeks a preliminary injunction on the basis of a potential constitutional violation, 'the likelihood of success on the merits often will be the determinative factor.'" Obama for Am. v. Husted, 697 F.3d 423, 436 (6th Cir.2012)

In moving for a preliminary injunction, Plaintiffs raise cogent arguments to support the contention that subsection (12)(A) violates their First Amendment rights. In fact, when this case was on appeal, the Sixth Circuit observed that this Court did not reach the issue of whether that statute could be construed so as to be constitutional, but went on to "imagine that the district court would have been hard-pressed to find an interpretation of this statute that satisfies the First Amendment[.]" Jones, 848 F.3d at 752.

The Sixth Circuit's observation obviously weighs in favor of finding that Plaintiffs have a

strong likelihood of success on the merits. Nevertheless, "Supreme Court precedent makes it clear that courts should avoid unnecessary adjudication of constitutional issues," and "[w]here a statutory or nonconstitutional basis exists for reaching a decision . . . it is not necessary to reach the constitutional issue." Adams v. City of Battle Creek, 250 F.3d 980, 986 (6th Cir. 2001). Indeed, "[a] fundamental and longstanding principal of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them." Lyng v. Nw. Indian Cemetery Protective Ass'n, 485 U.S. 439, 445–46 (1988) (citations omitted); see also United States v. Elkins, 300 F.3d 638, 647 (6th Cir.2002) ("Courts should avoid unnecessary constitutional questions.").

The representations made by Defendants about the progress of pending legislation and the assurances from the Registry that it will not enforce subsection 12(A) while that legislation is pending makes it unnecessary for the Court to decide the constitutionality of the statute at this time. In fact, the Court may not even have to address the matter in the future, assuming that the pending legislation passes and the parties can resolve this matter based upon the change in the law.

Notwithstanding the fundamental precept that a court should pass on deciding a constitutional issue unless it becomes necessary, Plaintiffs argue that "no one knows what will happen with the bill" because it might not get out of committee or pass either the House or Senate, the Governor could veto it, or the legislature could defer consideration until the next legislative session. (Doc. No. 62 at 3). They also observe that, while the Registry has voted to take no action on complaints raising violations of subsection 12(A) until at least its next meeting in August 2017, there is nothing to preclude a change in plans before then, or pursuing such complaints at a later date.

These may be valid points, but the Court's present concern is not with the ultimate outcome of the case, but rather with whether an injunction should issue until the matter can be decided on the merits and, if so, the best way to accomplish that goal. The way to do that without engaging in what ultimately may be an unnecessary constitutional exposition is to take Defendants at their word and to make official that which they have promised by enjoining them from enforcement of subsection 12(A) until further order of the Court. In this way, Plaintiffs' concerns about being "left vulnerable" (Doc. No. 62 at 5) will be eliminated, and Defendants will not be harmed by having to comply with what they have effectively agreed to do.

Moreover, the broader public interest will be served by entering what should have been an agreed-upon injunction. After all, individual donations and expenditures to support or criticize candidates is "central to the meaning and purpose of the First Amendment," <u>Citizens United v. Federal Election Commission</u>, 558 U.S. 310, 329 (2010), and the Tennessee legislature has evidenced an intent to correct a potential deficiency in this state's voting law that arguably curtails that First Amendment right. The Court finds it prudent to let the process run its course while at the same time protecting those individuals, like Plaintiffs, who arguably fall within the ambit of subsection 12(A).

None of this is to suggest that Plaintiffs are without recourse should the pending legislation fail. To the contrary, they can file a motion to lift the stay, at which time the Court can, in accordance with Fed. R. 65(a)(2), consolidate the injunction hearing with a trial on the merits on the issue of whether subsection 12(A) violates the First Amendment. Nor should this Court's decision to forego addressing the constitutional issue at this time be read as anything more than being a part of the balancing of the equities, and most certainly not as a reflection of this Court's

opinion as to who should be deemed the prevailing party, even if the law changes as Defendants expect.

## IV. Conclusion

On the basis of the foregoing, Plaintiffs' Renewed Motion for Preliminary Injunction (Doc. No. 54) will be granted and Defendants will be enjoined from enforcing Tenn. Code Ann. § 2-10-1-102(12) (A) pending further Order of the Court. Defendants' Motion to Stay (Doc. No. 59) will also be granted.

An appropriate Order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE