UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| AMBER JONES and DEANNA LACK, ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | No. 3:16-cv-00677 |
| ) | **CHIEF JUDGE CRENSHAW** |
| KENT COLEMAN, HENRY FINCHER, ) | |
| PATRICIA HEIM, TOM LAWLESS, ) | |
| NORMA LESTER, and TOM MORTON, ) | |
| in their official capacities as members of the ) | |
| Tennessee Registry of Election Finance, ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION AND ORDER

On April 19, 2017, the Court entered an Order (Doc. No. 70) granting Plaintiffs' Renewed Motion for Preliminary Injunction (Doc. No. 54), enjoining enforcement of Tenn. Code Ann. § 2-10-102(12)(A), and staying the case pending further Order of the Court. Less than a month later, and notwithstanding the existence of the stay, Defendants filed a Renewed Motion to Dismiss for Lack of Jurisdiction (Doc. No. 71), arguing that this case should be dismissed because the language in the statute about which Plaintiffs complain has been removed by the Tennessee General Assembly. Although "Plaintiffs believe the Court should lift the stay for all purposes," (Doc. No. 73 at 1), they oppose dismissal of the action (Doc. No. 74).

### I. Background

On May 9, 2017, Governor Bill Haslam signed into law Public Chapter 347 that amended the definition of a political campaign committee (also known as a political action committee or "PAC"). Under the current version of the law, a "political campaign committee" means:

1

>    (A) Any corporation or any other organization making expenditures, except as provided in subdivision (4), to support or oppose a measure; or
>
>    (B) Any committee, club, corporation, association, or other group of persons which receives contributions or makes expenditures to support or oppose any candidate for public office or measure during a calendar year in an aggregate amount exceeding one thousand dollars ($1,000)[.]

(Doc. No. 71-1 at 1, Public Chapter No. 347, Senate Bill No. 1265). Absent from the new law is the language which previously appeared in Tenn. Code Ann. § 2-10-102(12)(A) ("subsection 12(A)") that defined a PAC to include "[a] combination of two (2) or more individuals, including any political party governing body, whether state or local, making expenditures, to support or oppose any candidate for public office or measure, but does not include a voter registration program."

In light of this change in the law, and given that the Verified Complaint is premised on the assertion that subsection 12(A) violated the free speech and association clauses of the First Amendment, as well as the equal protection and due process clauses of the Fourteenth Amendment, Defendants argue that dismissal is warranted. This is because the case is moot and there is no longer a case or controversy before the Court.

In response, Plaintiffs argue that "repeal of subsection (12)(A) does not moot this case because subsection 12(A) still controls the consequences of Plaintiffs' past conduct," including their acting as an "unregistered PAC when they conducted their Facebook advertising on April 26 and 27, 2017." (Doc. No. 74 at 5). They claim that the Registry could fine them because the advertisement was posted before the repeal, and insist that "[t]he Court has to make its injunction permanent for Plaintiffs to be safe." (Id. at 6). Thus, Plaintiffs argue that "[t]he Court should reach the merits of the case, declare the Act unconstitutional as applied to PACs under subsection (12)(A)

2

and make the injunction permanent." (Id. at 2). The Court declines Plaintiffs' invitation.

## II. Application of Law

A federal court's power to adjudicate is limited to "cases and controversies" under Article III of the Constitution and "[t]he mootness doctrine is a critical component of this jurisdictional limitation." Green Party of Tennessee v. Hargett, 700 F.3d 816, 822 (6th Cir. 2012). Even where, as here, a plaintiff has standing to bring suit, the complaint may be dismissed at any time for "mootness," a concept which the Supreme Court has described as "'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" Arizonans for Official English v. Arizona, 520 U.S. 43, 67, n. 22 (1997) (quoting United States Parole Comm'n v. Geraghty, 445 U.S. 388, 397 (1980)); see Hall v. Beals, 396 U.S. 45, 48 (1969) ("Even when an action presents a live case or controversy at the time of filing, subsequent developments . . . may moot the case."). Therefore, "'[t]he mootness inquiry must be made at every stage of a case,'" and "[i]n analyzing issues of mootness it is helpful to keep in mind that '[t]hese problems often require a highly individualistic, and usually intuitive, appraisal of the facts of each case.'" Gottfried v. Medical Planning Services, Inc., 280 F.3d 684, 691 (6th Cir. 2002) (quoting McPherson v. Michigan High Sch. Athletic Ass'n, 119 F.3d 453, 458 (6th Cir.1997)).

"Mootness occurs 'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." Midwest Media Property, L.L.C. v. Symmes Tp., 503 F.3d 456, 460 (6th Cir.2007) (quoting Powell v. McCormack, 395 U.S. 486, 496 (1969)). However, "[a] controversy does not cease to exist merely by virtue of a change in the applicable law," Hamilton Cty. Educ. Ass'n v. Hamilton Cty. Bd. of Educ., 822 F.3d 831, 835 (6th Cir. 2016), "because 'if that

3

were the rule, a defendant could moot a case by repealing the challenged statute and replacing it with one that differs only in some insignificant respect,'" Green Party, 700 F.3d at 822 (citation omitted). "Rather, the court should consider whether the new statute 'is sufficiently similar to the repealed [statute] that it is permissible to say that the challenged conduct continues.'" Hamilton Cty. Educ., 822 F.3d at 835 (quoting Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, 508 U.S. 656, 662 n.3 (1993)). "Stated another way, the question is whether the underlying statute 'has been sufficiently altered so as to present a substantially different controversy.'" Id. (quoting Green Party, 700 F.3d at 823).

Here, not only has § 2-10-102 been altered, it has been reworked to exclude the offending language found in subsection 12(A). Plaintiffs' assertion that the Registry could fine them based upon a violation of a statute that is no longer on the books is "pure conjecture," and "[t]here is simply no evidence in the record to suggest that this scenario is likely to occur." Green Party, 700 F.3d at 823. Besides, the law in Tennessee has long been that "[t]he repeal of a penal statute pardons all offenses committed before the repeal, unless there is a saving provision which perpetuates the right to prosecute under the original statute." Stinson v. State, 208 Tenn. 159, 344 S.W.2d 369, 372 (Tenn. 1961); see Allen v. State, 2004 WL 1908809, at *3 (Tenn. Crim. App. Aug. 25, 2004) (identifying Stinson as "stat[ing] the controlling rule").

There is no provision in Public Chapter 347 that preserves the Registry's right to prosecute for conduct that occurred when subsection (12)(A) was still in effect, nor has there been any showing that there is separate legislation reserving such right. In this regard, Plaintiffs' reliance on Cleveland Branch NAACP v. City of Parma, 263 F.3d 513, 530-31 (6th Cir. 2001) is misplaced. That case did not involve a repealed statute coupled with clear authority from the state's highest

4

court that a prosecution under a defunct statute is unlawful. Rather, it involved hiring officials disregarding a municipal ordinance relating to residency requirements.

In their Sur-Reply, Plaintiffs argue that "[t]he savings statute eliminates Defendants' last-ditch argument for getting this case dismissed on mootness grounds." (Doc. No. 77-1 at 3). They quote the "relevant" language of the statute as providing:

> When a penal statute or penal legislative act of the state is repealed or amended by a subsequent legislative act, the offense, as defined by the statute or act being repealed or amended, committed while the statute or act was in full force and effect shall be prosecuted under the act or statute in effect at the time of the commission of the offense.

(Id. at 2) (quoting Tenn. Code Ann. § 39-11-112). Based on that language, Plaintiffs contend they are subject to the law in effect at the time of their political activity, meaning that they can still be prosecuted under Subsection 12(A) for their Facebook advertisement.

Tennessee's savings statute has repeatedly been read to apply to pending or active prosecutions, albeit in the context of sentencing. See, Hedges v. State, 2013 WL 5744777 (Tenn. Crim. App. Oct. 21, 2013); Phelps v. Tennessee Dep't of Correction, 2000 WL 1038115, at *2 (Tenn. Ct. App. July 28, 2000); State ex rel. Stewart v. McWherter, 857 S.W.2d 875, 877 (Tenn. Crim. App. 1992). In this regard, Plaintiffs miss the point by arguing that "Defendants have used case law rather loosely" in citing Pipefitters Local Union No. 562 v. United States, 407 U.S. 385, 432-35 (1972), because "the Supreme Court actually held that the repeal of a federal penal statute did not abate a prosecution, due to the federal savings statute, 1 U.S.C. § 109." (Doc. No. 77-1 at 2). In Pipefitters, however, the law changed after oral argument, and the Supreme Court explicitly

5

noted that "[t]he rule is well established that prosecutions under statutes impliedly or expressly repealed *while the case is still pending on direct review* must abate in the absence of a demonstration of contrary congressional intent or a general saving statute." 407 U.S. at 432 (emphasis added). Plaintiffs, of course, have not been fined, nor is there any indication that they will be for past conduct.

Moreover, the Tennessee Supreme Court has stated that "the general provisions of § 39-11-112 and the principles against retroactive application of statutes mandate that an offense committed under a repealed or amended law shall be prosecuted under that law, *unless the new law provides for a lesser penalty*." State v. Cauthern, 967 S.W.2d 726, 747 (Tenn. 1998) (emphasis added) (citing State v. Smith, 893 S.W.2d 908, 919 (Tenn.1994) and State v. Brimmer, 876 S.W.2d 75, 82 (Tenn. 1994)). This is in keeping with the last sentence of the savings statute, which Plaintiffs conveniently omit from their quotation of the "relevant" language. That sentence reads: " Except as provided under § 40-35-117[1], in the event the subsequent act provides for a lesser penalty, any punishment imposed shall be in accordance with the subsequent act." Tenn. Code Ann. § 39-11-112. See State v. Dunn, 901 S.W.2d 398, 399 (Tenn. Crim. App. 1995) ("T.C.A. § 39-11-112 provides that if the legislature reduces the penalty for an offense between the time of the offense's commission and sentencing, the defendant is entitled to sentencing under the lesser penalty."); State v. Young, 904 S.W.2d 603, 607 (Tenn. Crim. App. 1995) ("Although the [savings] statute allows for prosecution of an act committed under prior law, if the revised or amended statute provides for a lesser penalty, the defendant must be given that lesser penalty."). Given the repeal of Subsection 12(A) and the absence of any suggestion that the new statute provides *any* penalties for the PAC at

---

[1] This section relates to sentencing in criminal cases in accordance with the 1989 Sentencing Act.

6

issue in this case, the savings statute does not save Plaintiffs' claim.

"Absent special circumstances . . . , the legislative repeal of a statute renders a case challenging that statute moot." Libertarian Party of Ohio v. Husted, 497 F. App'x 581, 583 (6th Cir. 2012). Even though "voluntary cessation" may serve as an exception, it "properly applies only when a recalcitrant legislature clearly intends to reenact the challenged regulation," Kentucky Right to Life, Inc. v. Terry, 108 F.3d 637, 645 (6th Cir. 1997). Just as in Kentucky Right to Life, "[t]he record before [the Court] is devoid of any expressed intention by the [legislature] to reenact the prior legislative scheme." Id.

To compound matters, Plaintiffs ask the Court not only to rule on the constitutionality of a nonexistent statute, but also to enjoin its enforcement. How that can be accomplished is not explained but, as this Court noted in its prior Order, "'Supreme Court precedent makes it clear that courts should avoid unnecessary adjudication of constitutional issues.'" (Doc. No. 69 at 10) (quoting Adams v. City of Battle Creek, 250 F.3d 980, 986 (6th Cir. 2001)). Indeed, "[a] fundamental and longstanding principal of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them." Lyng v. Nw. Indian Cemetery Protective Ass'n, 485 U.S. 439, 445–46 (1988) (citations omitted).

Here, the Court finds it not only unnecessary, but also imprudent to determine the constitutionality of a statute that no longer exists and which has not been enforced against Plaintiffs, even though they claim to be "asserting the constitutional rights of other people not before the court," and argue that other "groups also need the Court's protection." (Doc. No. 74 at 7). Not only does the "case or controversy" language in Article III require that a case be live and not moot, it also "prohibits all advisory opinions, not just some advisory opinions and not just advisory opinions that

7

hold little interest to the parties or the public." Fialka-Feldman v. Oakland Univ. Bd. of Trustees, 639 F.3d 711, 715 (6th Cir. 2011). Plaintiffs present at best a theoretical possibility that they could be fined for violation of former subsection 12(A), but a federal court has "no power to offer an advisory opinion, based on hypothetical facts." Commodities Exp. Co. v. Detroit Int'l Bridge Co., 695 F.3d 518, 525 (6th Cir. 2012).

### III.

Accordingly, the Court rules as follows:

(1) The stay previously entered in this case (Doc. No. 70) is **LIFTED**;

(2) Defendants' Renewed Motion to Dismiss (Doc. No. 71) is **GRANTED**; and

(3) The Complaint is hereby **DISMISSED WITH PREJUDICE** pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction.

The Clerk of the Court shall enter judgment in favor of Defendants in accordance with Rule 58 of the Federal Rules of Civil Procedure.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE